IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEITH FOLLWEILER

        Plaintiff,

v.

WOLTERS KLUWER HEALTH, INC.

        Defendant.

CIVIL ACTION

No.

JURY TRIAL DEMANDED

# COMPLAINT

Plaintiff Keith Follweiler files this Complaint against Defendant Wolters Kluwer Health, Inc., and in support thereof avers as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over Counts I and II pursuant to 28 U. S. C. §1331, in that these claims are based upon a law of the United States of America, the Age Discrimination in Employment Act, 29 U. S. C. §621 ("ADEA").

2. Venue is appropriate in this Court pursuant to 28 U. S. C. §1392(b) in that Defendant has ongoing business operations in this District and the events giving rise to the claim occurred in this District.

3. The amount in controversy exceeds $150,000.00, exclusive of interest and costs.

4. Plaintiff has complied with the applicable administrative remedies by first filing a Charge with the Equal Employment Opportunity Commission ("EEOC") on February 5, 2021, Charge no. 530-2021-02137, and simultaneously dual filing a Complaint with the Pennsylvania Human Relations Commission ("PHRC") (Case no. unknown).

5. Plaintiff is filing this action in excess of sixty (60) days after the filing of his EEOC Charge, the requisite period of time to proceed in federal court with claims under the ADEA.

6. Plaintiff intends to amend this Complaint and assert causes of action for age discrimination and retaliation under the Pennsylvania Human Relations Act, 43 P. S. §955(a), ("PHRA"), upon receipt of applicable authority from the PHRC.

## PARTIES

7. Plaintiff Keith Follweiler ("Follweiler") resides at 1659 Victoria Circle, Allentown, PA 18103.

8. Defendant ("Wolters Kluwer") maintains a principal place of business at 2001 Market Street, Suite 5, Philadelphia, PA 19103.

9. At all times relevant hereto, Wolters Kluwer was acting through its agents, servants and employees, who were acting within the scope of their authority, in the course of their employment and under the direct control of Wolters Kluwer.

## FACTUAL BACKGROUND

10. Follweiler is 61 years of age.

11. Follweiler was employed by Wolters Kluwer for over 21 consecutive years.

12. Wolters Kluwer is a publisher of textbooks, reference tools and electronic information for professionals and students in medicine, nursing, allied health and pharmacy, which also provides clinical technology, research and safety solutions for clients that assists with effective decision-making and outcomes across healthcare.

13. Wolters Kluwer has annual revenue of approximately $5.7 billion and over 19,000 employees worldwide.

14. On July 7, 1999, Follweiler commenced employment with Wolters Kluwer as Director of Marketing.

15. Four years later, in September 2003, Follweiler was promoted to Executive Director of Marketing a position in which he served for nine years until October 2012.

16. From October 2012 to April 2014, Follweiler was Business Insights Manager.

17. As of April 2014, Follweiler became Senior Business Intelligence Manager; a position in which he served for over six years.

18. On December 3, 2020, Follweiler was advised that his employment would be terminated effective, December 31, 2020.

19. At the time of the termination, Follweiler was paid an annual salary of $142,575.03, plus a bonus of approximately $10,000.00, and company sponsored employment benefits.

20. Follweiler had a successful performance record and generally positive performance evaluations during the first two decades of his career at Wolters Kluwer.

21. Three times during Follweiler's career, he received the Wolters Kluwer "VIP" award.

### A. Kevin Ryan's Hiring as Director of Business Intelligence

22. As of November 24, 2019, Follweiler began reporting to Kevin Ryan ("Ryan"), Director of Business Intelligence (approximate age: 41), a new hire.

23. Two other employees also reported directly to Ryan; John Flynn (approximate age: 24), and Vishal Singh (approximate age: 27).

24. Shortly after Follweiler began reporting to Ryan, Follweiler observed that he was being treated much differently than his two substantially younger peers.

3

25. Ryan also began to express a view of Follweiler's work performance that was totally inconsistent with previous assessments of Follweiler's work.

26. Follweiler did his best to satisfy Ryan.

27. Ryan advised Follweiler that he would need to take on work previously performed by John Flynn because Flynn was a recent Yale graduate, and he could not be doing the work that was assigned to him.

28. Follweiler, who was very familiar with Wolters Kluwer's workload expectations, indicated that it was impossible for him to complete all the work that he had been assigned and that he was overwhelmed.

29. On one occasion, Ryan also inadvertently indicated that Follweiler's age was on his mind when he referred to Follweiler as, "Papa."

### B. Follweiler's First Human Resources Complaint

30. By February 2020, it was clear to Follweiler that he was being treated differently than substantially younger employees and harassed.

31. Pursuant to Wolters Kluwer policy, on February 10, 2020, Follweiler submitted a formal complaint to Jenny Edwards ("Edwards"), Director of Human Resources Business Partners, in which Follweiler he indicated that after seven years of dedicated service to his department in good standing, he was being treated much differently than his two co-workers, who were less than half his age, and who were being assigned a substantially lower volume of work.

32. Edwards advised Follweiler that a Human Resources investigation would ensue, and that Amanda Bialon ("Bialon") of Human Resources was assigned to conduct the investigation.

33. On February 11, 2020, eleven (11) days after Follweiler filed his age discrimination complaint, Director of Business Intelligence Ryan attempted to get Follweiler to violate Wolters Kluwer data security policy and have Follweiler obtain for Ryan secure and sensitive physician practice information for his "buddies", Scott Cole in Tulsa, OK and Arshiya Sharafi in San Diego, CA.

34. The action that Ryan requested Follweiler to take is considered misconduct and carries a penalty of termination according to the Wolters Kluwer By-Laws.

35. Follweiler did not provide Ryan with the information.

36. While Follweiler was not advised as to the substance of any investigation that was presumably conducted by Wolters Kluwer, on February 28, 2020, Bialon advised Follweiler that Ryan's behavior was not discriminatory or harassment, but that the company "had a talk with Kevin about the tone of his communication, which should improve."

37. Ryan's tone towards Follweiler never changed in the following months.

### C. Follweiler's 2019 Performance Review

38. The same day that Bialon advised Follweiler that she found no discrimination or harassment, Director of Business Intelligence Ryan provided Follweiler with his 2019 Performance Review in which Follweiler was given an overall rating of "Needs Improvement" (2.0).

39. The Performance Review was prepared and signed by Ryan, even though he was only Follweiler's supervisor for five weeks in 2019 (three weeks of which either Ryan or Follweiler were on vacation).

40. In a 2019 Q3 performance check-in, two weeks before Ryan was hired, Follweiler's prior supervisor, Vice President Heidi Alexander, complemented Follweiler's work

and achievements for the year and said that he was on the path of success and that he had assumed an extra workload in light of the many open positions in the Department.

41. Prior to the 2019 Performance Review, Follweiler consistently received a rating of "Meets and Sometimes Exceeds Expectations (3.0) for all of his past years in the Department.

42. Follweiler prepared a detailed response to the 2019 Performance Review and provided a copy to Bialon of Human Resources.

### D. Follweiler's 2020 Work Assignments

43. During the year 2020, Follweiler's job description was changed three times unknowingly to Follweiler.

44. When Follweiler became aware of the changes to his job description, he questioned both Bialon and Ryan about the changes and forwarded the job description document provided to him when he started in the position.

45. Neither Bialon nor Ryan provided an answer to Follweiler as to which job description was accurate, and there was no explanation offered as to the new requirements that were added.

46. On June 15, 2020, Follweiler was advised that there was a gap in his skills "essential" to perform his duties in the Department and he was given a new assignment to complete.

47. It was clear to Follweiler that Ryan did not expect Follweiler to complete the assignment and acquire the new skills.

48. Bialon said a meeting would take place in two weeks to review Follweiler's "gap" and the assignment.

49. Follweiler acquired the skills recommended and completed the assignment on time.

50. The only review that Ryan provided of the 100-page document was, "It looks like you did a good job", and Bialon never followed up.

### E. Follweiler's Second Human Resources Complaint

51. Follweiler continued to be subject to the same unfair workload, criticism, and harassment by Ryan, which Follweiler continued to believe was based on his age in that he was being treated substantially different than his peers.

52. On May 7, 2020, Follweiler advised Bialon and Edwards of Human Resources that the discrimination and harassment was continuing.

53. Follweiler was never advised of any investigation by Human Resources regarding his May 7, 2020, complaint.

### F. The September 3, 2020 Performance Improvement Plan

54. On September 3, 2020, Ryan issued Follweiler a 90-day Performance Improvement Plan ("PIP").

55. On September 8, 2020, Follweiler provided a response to the PIP, making it clear that many of the criticisms and issues outlined in the PIP were unwarranted, however, Follweiler stated that he would do his absolute best to attempt to comply with the PIP, which he largely met.

### G. Wolters Kluwer's Termination of Follweiler's Employment

56. On December 3, 2020, Follweiler was advised that his employment would be terminated effective, December 31, 2020.

57. Following the termination of Follweiler's employment, Follweiler's duties were assigned to substantially younger employees.

58. In terminating Follweiler's employment and continuing to employ two substantially younger colleagues who reported to Director of Business Intelligence Ryan, whom Ryan treated differently; Wolters Kluwer treated Follweiler differently than substantially younger employees.

59. Despite the fact that Wolters Kluwer encourages employees to report perceived discrimination at the workplace with the assurance that there will be no retaliation, Follweiler was retaliated against for making good faith complaints age discrimination.

60. The proffered reason for the termination of Follweiler's employment is pretextual.

61. Wolters Kluwer's actions have been outrageous in that its motives and conduct as set forth above are malicious, wanton, reckless, willful and oppressive.

62. Follweiler has sustained substantial damages as a result of Wolters Kluwer's termination of his employment in the form of lost wages, benefits and emotional distress.

## COUNT I

## VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT

## 29 U. S. C. § 621, et. seq.

63. Paragraphs 1 to 62 are incorporated herein by reference, as if set forth in full.

64. Wolters Kluwer's decision to terminate Follweiler's employment and replace him and/or assign his job duties to substantially younger employee(s) constitutes unlawful age discrimination in violation of the ADEA.

65. Wolters Kluwer's actions towards Follweiler were arbitrary and capricious, and based on a discriminatory animus towards older employees in the workplace.

66. Wolters Kluwer's conduct is per se unlawful and constitutes unlawful age discrimination in violation of the ADEA.

67. As a direct result of the aforesaid unlawful retaliation, Follweiler has sustained permanent and irreparable harm.

WHEREFORE, Plaintiff Keith Follweiler requests that this Court enter judgment in his favor and against Defendant Wolters Kluwer Health, Inc., and that this Court enter a declaratory judgment that Defendant's actions complained of herein violate the enactments of the federal legislature; and award Plaintiff damages exceeding $150,000.00, in the form of all compensation and monetary losses, which he has been denied, including back pay, front pay, pre-judgment interest; liquidated damages reasonable attorneys' fees, expert witness fees, costs, and all other relief permitted by the Age Discrimination in Employment Act, and any other relief, which the Court deems appropriate.

## COUNT II

## VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT

## 29 U. S. C. § 621, et. seq.

### RETALIATION

68. Paragraphs 1 through 67 are incorporated herein by reference as though set forth in full.

69. On February 10, 2020, Follweiler engaged in protected activity under the ADEA when he complained to Wolters Kluwer that he was being discriminated against due to his age.

70. On May 7, 2020, Follweiler engaged in protected activity under the ADEA when he complained to Wolters Kluwer that he was being discriminated against due to his age.

71. Wolters Kluwer's decision to terminate Follweiler's employment constitutes

9

retaliation against Follweiler for reporting conduct which he reasonably believed to be age discrimination.

72. As a direct result of the aforesaid unlawful retaliation, Follweiler has sustained permanent and irreparable harm.

73. Wolters Kluwer's actions towards Follweiler were arbitrary and capricious, and based on a discriminatory animus towards older employees in the workplace who complained about age discrimination.

74. Wolters Kluwer's conduct is per se unlawful retaliation in violation of the ADEA.

WHEREFORE, Plaintiff Keith Follweiler requests that this Court enter judgment in his favor and against Defendant Wolters Kluwer Health, Inc., and that this Court enter a declaratory judgment that Defendant's actions complained of herein violate the enactments of the federal legislature; and award Plaintiff damages exceeding $150,000.00, in the form of all compensation and monetary losses, which he has been denied, including back pay, front pay, pre-judgment interest; liquidated damages reasonable attorneys' fees, expert witness fees, costs, and all other relief permitted by the Age Discrimination in Employment Act, and any other relief, which the Court deems appropriate.

/S/ Andrew S. Abramson, Esq.
_____
Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742

Attorney for Plaintiff Keith Follweiler

Dated: July 12, 2021